Filed 11/13/23  P. v. Palomar CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>IGNACIO FRANCO PALOMAR III,<br><br>    Defendant and Appellant. | 2d Crim. No. B321801<br>(Super. Ct. No. 14C-38830)<br>(San Luis Obispo County) |

Ignacio Franco Palomar III was convicted of second degree murder.  He appeals an order denying his Penal Code section 1172.6 petition for resentencing.[1]  The order was made at the prima facie stage of the proceedings.  The petition's allegations, if true, would have entitled appellant to relief.  Without requiring the People to file and serve a response to the petition, the trial court summarily denied the petition because appellant was the actual killer and therefore not eligible for relief.

---

[1] All statutory references are to the Penal Code.

Appellant contends that, because the trial court did not review his record of conviction and "there was no admissible evidence whatsoever to establish any fact supporting [his] conviction, or the theory under which the jury convicted him, the court erred in denying the petition [and] finding [he] had failed to establish a prima facie case." Appellant requests that we "reverse . . . and remand the matter . . . with directions to hold a hearing at which it considers admissible evidence from the record of conviction to determine whether [he] has made a prima facie case."

We affirm because (1) the factual summary in our prior appellate opinion, *People v. Palomar* (2020) 44 Cal.App.5th 969, 971-973 (*Palomar*), shows that appellant was the actual killer; (2) the judge at the section 1172.6 hearing was the same judge who had presided at appellant's trial; therefore, she knew appellant was the actual killer irrespective of our prior opinion; (3) appellant did not deny that he was the actual killer; (4) appellant was not eligible for section 1172.6 relief because he was convicted under a theory of implied malice; and (5) the jury instructions given at appellant's trial show he is not entitled to relief.

*Appellant's Petition*

In his petition appellant checked boxes stating that he had been convicted of "2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine" and that he "could not now be convicted of . . . murder because of changes made to Penal Code [sections] 188 and 189, effective January 1, 2019." Based on the petition, the trial court appointed counsel to represent appellant.

2

*Facts Underlying Appellant's Conviction*

The following factual summary is taken verbatim from our opinion in the appeal from appellant's murder conviction, *Palomar*, *supra*, 44 Cal.App.5th at pp. 971-973.

> One evening Erik Wolting and Gregory Rustigian went to a bar. Wolting estimated that Rustigian probably drank about 10 beers at the bar. . . .
>
> Wolting introduced Rustigian to Rosa Lopez. Rustigian "raised his voice" and said "something derogatory" about Mexicans. Rustigian was white. Rosa Lopez "recoiled and you could see that she wasn't happy with what he said." She "was upset with him."
>
> Appellant, Rosa Lopez's cousin, was inside the bar. . . . David Aguayo, a bouncer at the bar, was worried that appellant was going to get into a fight with Rustigian. Aguayo told appellant, "[Y]ou know I'm working here now and if you're gonna do something, don't do it inside, Dude." Appellant threatened, "I'm gonna fuck homeboy up."
>
> At about 11:30 p.m., Wolting and Rustigian left the bar. While they were getting ready to leave, Rosa Lopez's sister, Victoria Lopez, approached them and said, "'You guys are going to get jumped when you leave this bar.'" . . .
>
>     . . . .
>
> Wolting and Rustigian were walking on a public street about 50 feet away from the bar. Wolting "saw a shadow in back of us and . . . heard some noise." He turned around and saw "a black figure, just a shadow, because it was dark." Rustigian turned around at the same time. He did not "make any kind of physical movement towards" the assailant. The assailant punched Rustigian in the face. Rustigian did not try "to take a swing [at] or . . . punch" the attacker. It "was a matter of seconds" between the time that Wolting first "noticed the assailant" and the time that Rustigian "got punched." . . .
>
>     . . . .

After Rustigian was punched in the face, he "kind of jerked back, not too much, . . . but stayed standing erect and then fell down slowly." "[H]e closed his eyes and he started . . . falling backwards . . . towards the [concrete] curb." The back of Rustigian's head "connected with the edge of the curb[;] it sounded like a watermelon being dropped off a building."

"[T]he attacker turned around and walked away." Rosa Lopez told the police that appellant had admitted punching Rustigian.

. . . .

. . . .

. . . The cause of [Rustigian's] death was "a very severe brain injury."

Appellant did not testify. He concedes "that the evidence supports a reasonable inference that he threw the punch that led to Rustigian's death." He also concedes "that a punch caused the victim to fall and strike his head on the concrete, resulting in a fatal head injury."

*Section 1172.6*

Section 1172.6 was added to the Penal Code by Senate Bill No. 1437 and became effective on January 1, 2019. (Stats. 2018, ch. 1015, § 4.) Section 1172.6, subdivision (a) provides, "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts when" certain conditions apply.

After a facially valid section 1172.6 petition is filed and "[a]fter the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner

4

makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (*Id*., subd. (c).)

If an order to show cause is issued, the court shall conduct an evidentiary hearing to determine the petitioner's eligibility for relief. (§ 1172.6, subd. (d)(1).) At the evidentiary hearing the burden is on the People "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder . . . ." (*Id*., subd. (d)(3).)

*The Prima Facie Hearing*

On the date set for the prima facie hearing, appellant's counsel said in open court, "I believe in this case the petitioner . . . was convicted under an implied malice theory . . . ." The hearing was continued because the judge who had presided at the trial – Jacquelyn H. Duffy – was on vacation.

At the next hearing before Judge Duffy, the prosecutor was the same person who had represented the People at appellant's trial. The prosecutor said: "[Appellant] does not meet the requirements for relief under [section 1172.6] as he was the actual killer in this crime. Relief under this section only applies to people who are not the actual killers in a murder prosecution."

Appellant's counsel responded: "[A] facially valid petition comes down to whether or not the correct boxes were checked, and I believe that [appellant] has done so, . . . so I would ask that his case continue on to a prima facie event." "I'm not trying to say that [appellant] made a prima facie showing today, I'm saying that the Court should order briefing and then come back to see whether or not a prima facie showing has been made."

The trial court stated: "The real issue that I see here is that if the Court is aware that the petition doesn't qualify or will not

5

ultimately qualify for relief under [section 1172.6], in this case specifically because . . . [appellant] was the actual killer, convicted by a jury, and ultimately would not qualify for relief, is the Court obligated to go forward with a prima facie hearing and require counsel to file briefs just because the petition is . . . facially valid?"

The prosecutor replied, "I think it is entirely reasonable and, in fact, required by the statute that you use the knowledge that you have in regards to this case, and the evidence you heard in the trial, in making a judgment regarding this requested relief. [¶] Specifically in [section 1172.6,] sub[division (b)[](1), the [Penal] [C]ode specifically requires that the petition shall be filed with the court that sentenced the petitioner. You were the court that sentenced the petitioner and had particular knowledge in regards to the facts of this case. [Appellant] is not eligible for relief because he was the actual killer."

The trial court ruled: "[T]he court does not have an obligation to set a prima facie hearing when that hearing I believe will be meritless based on the fact that [appellant] was the actual killer in this case. [¶] So I am going to deny the request that the Court set a briefing schedule, and I am going to deny the request for a prima facie hearing." The trial court also denied the section 1172.6 petition.

Although the trial court said it was denying appellant's request for a prima facie hearing, we conclude it conducted such a hearing and ruled that, as a matter of law, appellant could not make the requisite prima facie showing because he was the actual killer.

*The Trial Court Did Not Err in Concluding*
*Appellant Could Not Make a Prima Facie Showing*

In determining whether the petitioner has made the requisite prima facie showing, "'"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause."'  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'  [Citation.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'"  (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).)

"Appellate opinions . . . are generally considered to be part of the record of conviction."  (*Lewis*, *supra*, 11 Cal.5th at p. 972.)  "The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless.  This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process."  (*Id.* at p. 971.)  "We independently review a trial court's determination of whether a petitioner has made a prima facie showing."  (*People v. Patton* (2023) 89 Cal.App.5th 649, 656.)

The trial court did not err in determining at the prima facie stage that appellant was ineligible for section 1172.6 relief.  "As a matter of law, resentencing relief under section 1172.6 is not

7

available to an 'actual killer.'" (*People v. Garcia* (2022) 82 Cal.App.5th 956, 973.) The factual summary in our prior opinion (*Palomar*, *supra*, 44 Cal.App.5th at pp. 971-973) unequivocally establishes that appellant was the actual killer. Where "the record . . . makes clear that [the petitioner] was the actual killer and the only participant in the killing," the petitioner "is not entitled to any relief under section 1172.6." (*People v. Delgadillo* (2022) 14 Cal.5th 216, 233.)

There is no statutory bar to consideration of our prior opinion's factual summary at the prima facie stage. Section 1172.6, subdivision (d)(3) provides that, at an evidentiary hearing conducted after the issuance of an order to show cause, "[t]he court may consider the procedural history of the case recited in any prior appellate opinion." In *People v. Flores* (2022) 76 Cal.App.5th 974, 988, the court interpreted this provision as prohibiting consideration of "the factual summary in an appellate opinion . . . at an evidentiary hearing to determine a petitioner's eligibility for resentencing." *Flores* concluded, "If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage." (*Ibid.*) We are not saying that our prior opinion's factual summary establishes, as a matter of law, appellant's ineligibility for resentencing at the prima facie stage. As discussed below, we consider other factors in determining that appellant failed to make the requisite prima facie showing.

The judge who ruled on the prima facie issue was the same judge who had presided at appellant's trial. Therefore, based on her personal knowledge of the trial proceedings and irrespective

of the factual summary in our prior opinion, she knew that appellant was the actual killer. She was not required to blind herself to this personal knowledge.

Moreover, at the prima facie hearing appellant did not deny that he was the actual killer. Judge Duffy said to appellant's counsel, "I don't think that you are representing to the Court, nor would I expect you to represent to the Court, that [appellant] was not the actual killer in this case." Counsel replied, "You know, Your Honor, I didn't -- I wasn't the attorney of record [at the trial]. I do know, you know, the facts that -- as they are set out in the -- in the appellate opinions, that's what I know of the case, so I wouldn't be prepared as of today to make any type of representation like that." The facts set out in the prior appellate opinion show that appellant was the actual killer.

Furthermore, our prior opinion unequivocally establishes that appellant is ineligible for section 1172.6 relief because he was convicted of murder under a theory of implied malice. In the opinion we noted, "The prosecution of appellant for murder was based on a theory of implied malice." (*Palomar*, *supra*, 44 Cal.App.5th at p. 974.) Appellant's sole claim in the earlier appeal was that "the evidence is insufficient to support the jury's finding of implied malice." (*Id*. at p. 971.)

During the section 1172.6 proceedings, appellant did not dispute that his murder conviction had been based on an implied malice theory. On the date initially set for the prima facie hearing, appellant's counsel said, "I believe . . . the petitioner . . . was convicted under an implied malice theory . . . ."

Thus, appellant was not convicted of "murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that

9

person's participation in a crime . . . ." (§ 1172.6, subd. (a).) "Second degree implied malice murder . . . is not based on a theory of imputed malice." (*People v. Schell* (2022) 84 Cal.App.5th 437, 444.) "Implied malice is not imputed malice. It requires that the perpetrator actually and personally harbor malice." (*People v. Carr* (2023) 90 Cal.App.5th 136, 139.) Although "Senate Bill No. 1437 amended section 188 to . . . abolish[] the natural and probable consequences doctrine, it maintained the viability of murder convictions based on implied malice, and the definition of implied malice remains unchanged." (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.)

In ruling that appellant was ineligible for section 1172.6 relief, the trial court did not rely on the implied malice theory underlying his murder conviction. Nevertheless, we may rely on this theory to uphold its ruling. "Appellate review is confined to the correctness or incorrectness of the trial court's ruling, not the reasons for its ruling." (*People v. Superior Court (Chapman)* (2012) 204 Cal.App.4th 1004, 1011; see also *People v. Smithey* (1999) 20 Cal.4th 936, 971-972 ["""'[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion""""].)

Finally, at appellant's trial the jury was not instructed on the felony-murder rule, the natural and probable consequences doctrine, or on a "theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a).) We grant the People's request to take judicial notice of the jury instructions.

Taking into account all of the above factors, we conclude the trial court did not err in ruling that appellant had failed to make a prima facie showing of eligibility for relief under section 1172.6.  Remand for a new prima facie hearing would be futile.

*Conclusion*

The order denying appellant's section 1172.6 petition is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P. J.

CODY, J.

11

Jacquelyn H. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Richard B. Lennon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, Roberta L. Davis, Deputy Attorney General, for Plaintiff and Respondent.